IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Gisela Valle, Carlos Valle, and the Conjugal Partnership comprised by them; <br><br> Plaintiffs <br><br> v. <br><br> Walgreen of Puerto Rico, Inc.; Walgreen Co.; <br><br> Defendants | Civil Action No. <br><br> Damages; Vicarious Liability; Punitive Damages <br><br> Trial by Jury Demanded |

## Complaint

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs Gisela Valle, Carlos Valle and the Conjugal Partnership comprised by them (collectively the "Plaintiffs"), through the undersigned attorney, and very respectfully state, allege and pray as follows:

### Nature of Complaint

1. This action stems from defendants' gross negligence in dispensing Ms. Gisela Valle a wrong dosage of her diabetes medication, exceeding by 700% the amount prescribed by her physician.

### The Parties

2. Gisela Valle is of legal age, married and a citizen of North Carolina. Ms. Valle is also known as Gisela López Bonilla or Gisela Valle Rodríguez. Her domicile is in 121 Seagull CT, Kill Devil Hills, North Carolina 27948-9036.

3. Carlos Valle is of legal age, married to Ms. Valle and a citizen of North Carolina. His domicile is in 121 Seagull CT, Kill Devil Hills, North Carolina 27948-9036.

1

4. Ms. Valle and Mr. Valle have formed a conjugal partnership, which is also included as a plaintiff in this case.

5. Walgreen of Puerto Rico, Inc., a corporation organized under the laws of Puerto Rico. Its principal place of business is in B7 Tabonuco Street, Suite 301. Walgreen of Puerto Rico is a citizen of Puerto Rico.

6. Walgreen Co., is a foreign entity authorized to do business in Puerto Rico and duly registered as such in the Puerto Rico Department of State with number 9349. Upon information and belief its principal place of business is in Deerfield, Illinois.

7. John Doe, who is included as a fictious defendant that cannot be readily identified at the time of this lawsuit, is any individual contributing to the damages caused by Walgreen to Plaintiffs.

8. ABC Inc., who is included as a fictious defendant that cannot be readily identified at the time of this lawsuit, is any insurance company providing coverage for the negligent acts of the defendants.

9. XYC Inc., who is included as a fictious defendant that cannot be readily identified at the time of this lawsuit, is any pharmaceutical company contributing to the negligent acts of the defendants.

## Jurisdiction and Venue

10. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), since plaintiffs and defendants are citizens of different States and the amount in controversy exceeds $75,000.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391(a)(c) since defendants are subject to the personal jurisdiction of this Court and a substantial part of the events giving

rise to the claims took place in Puerto Rico. Moreover, Defendants are found in Puerto Rico, transact business here and a significant part of the acts or omissions constituting the violations/offenses described herein occurred in Puerto Rico.

12. Plaintiffs demand trial by jury.

### Facts Common to All Claims

13. Ms. Valle is a long-term resident of North Carolina, who in February of 2024 traveled to Puerto Rico to visit her mother, who was experiencing certain healthcare problems.

14. As a type 2 diabetic, preparing herself to spend a prolonged stay in Puerto Rico to take care of her mother, Ms. Valle made the necessary arrangements with her stateside physicians to have her prescriptions ready to continue her treatment while on the Island.

15. As such, she brought with herself the Ozempic prescription she regularly takes.

16. On or about February 13, 2024, Ms. Valle visited the Walgreens Cayey store to obtain her Ozempic prescribed medication, which was explicitly prescribed by her physician at a dosage of 0.25 mg to be injected subcutaneously once weekly.

17. Later that day when she picked up her medication, she noticed it had a different package and asked the Walgreens' pharmacist to double-check if the medication she was given was the correct one.

18. She was assured that the medication was consistent with her prescription.

19. Upon information and belief, Walgreens has failed to adequately train and supervise its employees in Walgreens Cayey with protocols necessary to precisely avoid this type of errors.

20. Based on those assurances, that same day Ms. Valle took her "prescribed" dose

3

during the night.

21. During that night she experienced nausea, chills, sweats, palpitations and severe stomach pain, prompting her to visit the Cayey area hospital, Centro de Salud Mariano Rivera Ramos, on February 14, 2024.

22. At that time, Ms. Valle thought that her symptoms were a "side effect" caused by her regular use of Ozempic.

23. She visited that same hospital on multiple occasions (February 16 and 28, March 7 and 24, 2024), while continuing to suffer from severe pain, sweating and dizziness.

24. From February 16 through February 22, 2024, Ms. Valle also visited the Cayey Menonite Hospital for a battery of tests, including an ECG, blood laboratories, CT scans and X-Rays.

25. On or about February 21, 2024, Ms. Valle began suspecting that her symptoms, which she had not experienced before, were not a "side-effect" of her regular consumption of Ozempic but rather the results of an erroneously dispensed dosage that was 700% higher than what her physician had prescribed to her.

26. Her physician's ordered dosage is 0.25mg, but Walgreens Cayey, carelessly and without any regard for her safety and wellbeing, dispensed her a much higher dosage of 2.0 mg.

27. Immediately upon suspecting that her poor medical condition was due to this gross oversight, on February 21, 2024, Ms. Valle visited Walgreens Cayey and made a complaint with the lead pharmacy on duty.

28. Alarmed with this information, Walgreens informed Ms. Valle's formal complaint to its adjuster, Continental Claims Service, Inc. ("Continental"), who was entrusted to seek

a quick settlement.

29. Continental documented Ms. Valle's complaint with claim number 4A202P24V9-WSC-57.

30. Subsequently, Continental, on behalf of Walgreens, made two written attempts (on March 15 and April 2, 2024) to try to settle this matter directly with Ms. Valle.

31. Ms. Valle also received several calls from representatives for Walgreens, who sought to resolve this issue with her out-of-court.

32. Ms. Valle returned to her home in North Carolina some time thereafter and continued to experience similar symptoms, which required more hospital visits and medical procedures.

33. She underwent an endoscopy on May 22, 2024.

34. On June 21, 2024, she underwent a Cholecystectomy to surgically remove her gallbladder.

35. Despite this, her symptoms persisted.

36. By August 7, 2024, her abdominal pain continued, with vomiting and nausea. At that time, she visited the Outer Banks Health hospital and was administered Benadryl, Inapsine and morphine, to manage her pain.

37. She was also prescribed to start ingesting Percocet and Phenergan. More CBCs and CTs of her abdomen were performed.

38. On August 23, 2024, she returned to Outer Banks Health with the symptoms of pain and was ordered "to hold on any further doses of Mounjaro until you discuss this with your primary care physician."

39. On August 30, 2024, she was also ordered to stop using Ozempic.

40. This was the first time that Ms. Valle was medically ordered to stop such antidiabetic mediation, which effectively confirmed her suspicions that the Ozempic overdose was the root cause of her problems.

41. On September 22, 2024, Ms. Valle experienced atypical chest pain and palpitations. She underwent further exams, including an EKG and X-Rays of her chest.

42. She visited Outer Banks again on October 15, 2024, with atypical chest pain.

43. She was scheduled for an Xray Small Bowel SER on October 23 and for an NUC Gastric Emptying Study on October 24, 2024. She was ordered to be off of gastric medicines for 4 days and off of opioids and narcotics for 16 hours.

44. She returned to the same hospital on November 2, 2024, and was diagnosed with anxiety and chronic abdominal pain. She was ordered to start ingesting tramadol and lorazepam.

45. On November 6, 2024, Ms. Valle returned to GastroenterologyEast, P.A., & Endoscopy Center with complaints of extreme nausea, extreme anxiety with panic attacks, epigastric pain, constipation, loss of appetite, weight loss and constantly being cold.

46. Two weeks later, on November 19, 2024, Ms. Valle visited Duke Health hospital from the University of Duke. She still presented a similar medical condition, with abdominal pain, epigastric, chronic nausea, and anxiety disorder due to general medical condition.

47. On December 5, 2024, Ms. Valle was referred to see a mental health specialist due to an anxiety disorder developed as a result of his medical condition.

48. Since then, Ms. Valle has been treated at the Thrivewell Counseling Center, where she was been diagnosed as follows:

> I have seen Gisela Valle for her anxiety on 12/5/2024, 12/9/2024 and 12/16/2024. Gisela is experiencing anxiety and panic attacks on a regular basis and is working on acquiring techniques to help her manage her symptoms. Her anxiety started after a trip to Puerto Rico where she experienced medical complications. She now shows symptoms of post-traumatic stress syndrome related to the incident.

49. To date, Ms. Valle continues with her medical ordeal due to Defendants' negligent acts.

50. Prior to Walgreens' careless overdose, Ms. Valle's medical condition was normal with no presence of any of the new symptoms that she was been experiencing for the past months.

51. Mr. Valle, in turn, has lost many hours of work to attend to his wife's needs and dozens of hospitalizations and medical visits that she has needed, in addition to the mental anguishes that result from seeing loved ones under continuous pain and suffering.

52. Likewise, the conjugal partnership has covered significant medical expenses incurred by Ms. Valle due to her developed condition.

## Causes of Action

### First Cause: Damages for negligence

53. Plaintiffs incorporate and reallege in their entirety all prior allegations.

54. Defendants' negligent acts and omissions are the proximate cause of all the damages suffered by Plaintiffs.

55. Defendants acted in complete disregard for Ms. Valle's health and safety by grossly dispensing a medication with 700% higher dosage.

56. The egregious omission by Walgreens not only placed Ms. Vallet's health and safety at grave risk but also constitutes a severe breach of professional and ethical

7

responsibilities expected of a licensed pharmacy.

57. The consequences of such a mistake have resulted in significant damages to Ms. Valle, her husband and the conjugal partnership between them.

58. Among other things, Ms. Valle has had severe medical complications, including several hospitalizations, severe pain, nausea, vomiting, has undergone several medical procedure and surgeries, has experienced mental suffering, and is even suffering from post-traumatic stress syndrome, having experienced several panic attacks.

59. Plaintiffs' medical bills have increased significantly during this time.

60. Plaintiffs's damages, including but not limited to physical, mental, economic damages, are estimated at a sum of no less than $500,000.00.

61. Defendants are jointly and severally liable to Plaintiffs.

## Second Cause of Action:

## Punitive Damages

62. Plaintiffs incorporate and reallege in their entirety all prior allegations.

63. Puerto Rico's new Civil Code of 2020, in its Article 1538, allows Plaintiffs to seek compensation for punitive damages if the Defendants' conduct constitutes a gross disregard to the safety and life of others. '

64. In this case, Ms. Valle noticed that the Ozempic given to her in February 2024 by Walgreens Cayey contained a different package for the Ozempic she regularly took back home in North Caroline.

65. As such, she inquired about this difference and specifically asked Walgreens to confirm that she was being given the same medication.

66. This was the perfect opportunity for Walgreens to confirm that the dosage being

8

given to Ms. Valle was grossly incorrect.

67. Yet, Walgreens, in complete disregard to Ms. Valle's safety and life, made no verification at all or took the matter lightly. This conduct is abhorred by our legal system.

68. Consequently, Defendants are jointly responsible for this conduct, which entitle Plaintiffs to double compensation.

## Third Cause of Action:

## Damages due to Walgreens' vicarious liability

69. Plaintiffs incorporate and reallege in their entirety all prior allegations.

70. Walgreens should have in place policies and procedures reasonably designed to confirm the correct dosages of the medications it dispenses.

71. Likewise, Walgreens should have in place policies and procedures reasonably designed to supervise its employees, particularly when a customer raises a concern or red flag about her medication.

72. Walgreens failed to put in place such procedures in this case.

73. Such failure if the proximate cause of Plaintiffs' damages, which are estimated at a sum of no less than $500,000.00.

WHEREFORE, Plaintiffs respectfully requests that the Honorable Court grant the instant Complaint in its entirety, compensating all the damages suffered by Plaintiffs, including punitive damages. Plaintiffs also request any other relief available at law or in equity, plus costs and attorneys' fees.

RESPECTFULLY SUBMITTED.

In Guaynabo, Puerto Rico, this 20th day of February 2025.

**H. LOPEZ LAW, LLC**

Metro Office Park
Building 11, Suite 105-A
Guaynabo, PR 00968
Telephone: (787) 422-0243

*/s/Heriberto López-Guzmán*
Heriberto López-Guzmán
USDC-PR No. 224611
hlopez@hlopezlaw.com